### In the Matter of the ADOPTION OF M.A.S.

### Michael B. PARKS, Appellant–Respondent,

v.

### Jason JARBOE, Appellee–Petitioner.

No. 49A02–9712–JV–835.

Court of Appeals of Indiana.

June 26, 1998.

Michael B. Parks, Tell City, Pro Se.

## OPINION

SHARPNACK, Chief Judge.

Michael B. Parks appeals the trial court's order granting the petition for adoption of his alleged daughter, M.S., by the petitioner-appellee, Jason Jarboe. The sole issue is whether the trial court erred in granting the petition for adoption. We reverse.

The facts most favorable to the trial court's order follow. In September 9, 1994, Candice Jarboe gave birth to M.S. Although Michael is the alleged father of M.S., he has been incarcerated since May of 1994. In 1996, Candice married Jason. Thereafter, Jason filed a petition for the adoption of M.S. on March 18, 1997. Candice consented to the proposed adoption.

Michael is incarcerated at the Lakeside Correctional Center ("Center"). On March 21, 1997, the Center received registered mail for Michael containing a summons regarding Jason's proposed adoption of M.S. In July of 1997, the trial court held a hearing on the proposed adoption. Michael was neither present nor represented. On the same day, the trial court granted the petition for adoption.

 Before we reach the merits of this appeal, we note that Jason failed to file an appellee's brief. When the appellee fails to submit a brief, we need not undertake the burden of developing an argument for the appellee. Applying a less stringent standard of review, we may reverse the trial court if the appellant can establish *prima facie* error. *Johnson County Rural Elec. v. Burnell*, 484 N.E.2d 989, 991 (Ind.Ct.App.1985). *Prima facie* in this context is defined as "at first sight, on first appearance, or on the face of it." *Id.* Where an appellant is unable to meet this burden, we will affirm. *Blair v. Emmert*, 495 N.E.2d 769, 771 (Ind.Ct.App. 1986), *reh'g denied, trans. denied.*

 The sole issue raised is whether the trial court erred in granting the petition for adoption. When reviewing an adoption order, we will not disturb the trial court's decision unless the evidence at trial leads to only one conclusion and the trial court reached the opposite conclusion. *Bell v. A.R.H.*, 654 N.E.2d 29, 32 (Ind.Ct.App.1995). In our review, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Instead, we will examine the evidence most favorable to the trial court's decision. *Id.*

First, we note that the trial court incorrectly determined that Michael's consent to the adoption was not necessary. The trial court stated that

"[t]he putative father of the child, Michael Benjamin Parks, has received notice of these adoption proceedings at his last known address. Because paternity has not been established in Court, said putative Father's consent to the adoption is not necessary. The parental rights of Michael Benjamin Parks, with regard to [M.S.] are hereby terminated."

Record, p. 31. At the time Jason filed the petition for adoption, Ind.Code § 31–3–1–6 specified whose consent was required to grant a petition for adoption. The statute read in relevant part:

"(c) Except as otherwise provided in this section, a petition to adopt a child under eighteen (18) years of age may be granted only if written consent to adoption has been executed by:

\* \* \* \* \* \*

(2) the mother of a child born out of wedlock and the father of a child whose paternity has been established by:

\* \* \* \* \* \*

(B) a paternity affidavit executed under IC 16–37–2–2.1; unless the putative father gives implied consent to the adoption under section 6.4 [Ind.Code § 31–3– 1–6.4 (repealed 1997, current version at I.C. § 31–19–9–15) ] of this chapter...."

I.C. § 31–3–1–6 (repealed 1997, current version at I.C. § 31–19–9–1).[1]

■ Here, the record contained an affidavit from the Putative Father Registry ("Registry") which indicated that "[a] paternity determination is on file with the department." The Registry attached to their affidavit a paternity affidavit signed by Candice and Michael in September of 1994. In the paternity affidavit, Candice and Michael attest that Michael is the father of M.S. On its face, the paternity affidavit appears to be valid. Assuming the paternity affidavit was properly executed,[2] Michael's consent is required to grant Jason's petition to adopt M.S. See I.C. § 31–19–9–1.

However, assuming the paternity affidavit is not valid, and Michael has not established paternity, he would still be entitled to notice of the adoption proceedings as a putative father.[3] - Thus, we address whether Michael received adequate notice. Michael argues that the service of process was defective and in violation of the United States and Indiana constitutions.[4] Specifically, Michael argues that he never received notice of the adoption proceedings. Although he acknowledges the summons and notice were sent to, and received by, the Center, he contends that the official in charge of the Center did not deliver the summons and notice to him pursuant

1. The statute was repealed effective July 1, 1997, after Jason filed the petition for adoption. There were no substantive changes in the law.

2. At the time Michael and Candice executed the paternity affidavit, I.C. § 31–6–6.1–9 controlled the execution of paternity affidavits. The statute read in relevant part:

"(b) If there is no presumed biological father under subsection (a), a man is presumed to be the child's biological father if:

\* \* \* \* \* \*

(3) He and the child's mother execute an affidavit on a form provided by the state department of health acknowledging paternity no later than five (5) days after the child's birth and the person in attendance at the birth (or a parent under IC 16–37–2–2) files the affidavit with a local board of health...."

I.C. § 31–6–6.1–9 (repealed 1997, current version at I.C. § 16–37–2–2.1). Here, the paternity affidavit was executed on what appears to be a form provided by the state health department. In addition, Michael and Candice executed the paternity affidavit on September 14, 1994, five days after the birth of M.S.

3. While Michael does not address whether he was entitled to notice as a putative father, we note that Jason attempted to provide Michael with notice prior to the adoption hearing and Michael's name was on file with the Registry. Thus, we assume that Candice provided Jason's attorney with Michael's name and address "on or before the date the mother executes a consent to the child's adoption." I.C. § 31–3–1–6.1 (repealed 1997, current version at I.C. § 31–19–4–1). Under this assumption, Michael, as a putative father, was entitled to notice of the adoption proceedings pursuant to T.R. 4.1. See id.

4. As we resolve the issue on statutory grounds, we do not address Michael's constitutional claims.

to Ind. Trial Rule 4.3, which specifies the procedure for service of process to institutionalized persons. Therefore, Michael contends the notice was defective and the trial court's adoption order should be set aside.

■ This issue appears to be an issue of first impression in Indiana. At the time the petition for adoption was filed, the statute which addressed the notice of adoption proceedings to putative fathers read in pertinent part:

"(b) If, on or before the date the child's mother executes a consent to the child's adoption, the mother has provided an attorney or agency arranging an adoption with the name and address of a putative father who has:

(1) failed or refused to consent to the adoption of the child; or

(2) not had the parent-child relationship terminated under IC 31-6-5;

the putative father is entitled to receive notice of the adoption proceedings under Rule 4.1 of the Indiana Rules of Trial Procedure."

I.C. § 31-3-1-6.1 (repealed 1997, current version at I.C. § 31-19-4-1).[5] Although the statute required notice pursuant to T.R. 4.1, we presume the legislature intended notice to be made pursuant to T.R. 4.3 where the putative father is institutionalized.[6]

Trial Rule 4.3 provides that:

"Service of summons upon a person who is imprisoned or restrained in an institution shall be made by delivering or mailing a copy of the summons and complaint to the official in charge of the institution. It shall be the duty of said official to immediately deliver the summons and complaint to the person being served and allow him to make provisions for adequate representation by counsel. The official shall indicate upon the return whether the person has received the summons and been allowed an opportunity to retain counsel."

First, T.R. 4.3 requires that service upon an imprisoned person be made by delivering or mailing the summons to "the official in charge of the institution." The rule further places a duty upon that official to "immediately deliver the summons ... to the person being served and allow him to make provisions for adequate representation by counsel." T.R. 4.3. Here, the summons was mailed to "Michael Benjamin Parks c/o Lakeside Correctional Center." Record, p. 10. Thus, the mailing does not comply with the address requirement of the rule.

Second, the official is obligated to "indicate upon the return whether the person has received the summons and been allowed an opportunity to retain counsel." T.R. 4.3. Here, there is neither indication. Thus, the mailing further failed to comply with the rule.

To provide an imprisoned person with the protections T.R. 4.3 seeks to insure, the specified procedures must be followed. Because the procedures were not followed here, service on Michael was defective. Therefore, the trial court erred in concluding Michael received notice and granting the petition for adoption of M.S.

For the foregoing reasons, we reverse the judgment of the trial court, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HOFFMAN and MATTINGLY, JJ., concur.

---

5. The statute was repealed effective July 1, 1997, after Jason filed the petition for adoption. There were no substantive changes to the law.

6. We note that additional rules related to Trial Rule 4(4.1–4.7) may be applicable depending upon the circumstances of each case. Therefore, it would seem the legislature intended in I.C. § 31-3-1-6.1 to provide that notice should be made pursuant to the rule applicable to the circumstances and not only T.R. 4.1.